JOHN VASCONCELLES, as Adm'r of the Estate of Mark Vasconcelles, Deceased, *et al.*, Plaintiffs-Appellants, v. THE CITY OF SPRINGFIELD *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0685

Opinion filed June 2, 1988.

Roger C. Denton, of Kassly, Bone, Becker, Dix, Tillery & Reagan, P.C., of Belleville, for appellants.

Michael R. Cornyn, of Thomas, Mamer & Haughey, of Champaign, for appellees Sangamon County, Tom Roberts and Gary Russell.

John H. Tielsch, Assistant Corporation Counsel, of Springfield, for appellee City of Springfield.

Mark A. Kreger, of Lord, Bissell & Brook, of Chicago, for appellee William Roberts.

JUSTICE SPITZ delivered the opinion of the court:

This appeal was brought by the plaintiffs John Vasconcelles, administrator of the estate of Mark Vasconcelles, deceased, and John and Carol Vasconcelles, individually, following the dismissal, with prejudice, of their first-amended complaint against defendants City of Springfield, Sangamon County, William Roberts, Gary Russell, and Tom Roberts seeking money damages for the wrongful death of Mark Vasconcelles (deceased).

Plaintiffs' first-amended complaint alleges the following facts in each of its six counts. Tim Ferguson had previously committed violent acts against deceased and a friend of deceased. Ferguson had been on probation after pleading guilty to aggravated battery and, according to the allegations of plaintiffs' complaint, had a mental illness that would cause him to commit future violent acts against deceased. The complaint further alleges that Ferguson, who had recently been released from a mental institution, followed deceased on several occasions, tampered with deceased's residence, and made numerous threats on the life of deceased. The complaint also alleged that the death threats were communicated to defendants. Ferguson killed deceased on August 23, 1985.

As to each defendant, the complaint alleged acts of misconduct. Count I alleges that the City of Springfield, through its police officers and employees, owed a special duty to protect deceased but disregarded that duty by failing to properly investigate the threats, by failing to protect deceased, by failing to communicate the threats to the State's Attorney, probation officers, and appropriate medical personnel, and by failing to arrest Ferguson.

Count II, against Sangamon County, alleges the county, through its employees, including Gary Russell, an adult probation officer, owed a duty of ordinary care to deceased. Count II further alleges that although there was a medical report in the court file stating that Ferguson was a danger to deceased and should not be released without an updated medical examination to determine whether further supervision was required, no medical examination was conducted and, at the request of Russell, Ferguson's probation was terminated on March 19, 1985, without a hearing. In addition, on several occasions after Ferguson's probation was terminated, employees and agents of the county, including Russell, were advised of threats to deceased made by Ferguson.

Count V alleges that Gary Russell was Ferguson's adult probation officer and that Russell wilfully and wrongfully failed to monitor Ferguson's medical care during probation, failed to require a mental

examination and ignored the threats reported to him. According to the complaint, Ferguson killing deceased was the direct and proximate result of the alleged wilful and wanton acts of Russell. The allegations against defendant Tom Roberts, the chief probation officer for the county, are set forth in count IV, which repeats and realleges the allegations in count II and further states that Tom Roberts was responsible for the acts and omissions of Gary Russell.

William Roberts is the State's Attorney for the county. Count III alleges the State's Attorney breached a duty of ordinary care to deceased by failing to properly monitor Ferguson's medical care during probation; by failing to have the medical exam prior to termination of probation; by failing to have a hearing and to advise the court of the necessity of a mental evaluation; by failing to properly investigate reported threats; by failing to communicate these threats to medical personnel treating Ferguson; by failing to arrest Ferguson; and by failing to communicate to Springfield police officers the information concerning Ferguson's prior violent acts and medical conditions. Count VI alleges the State's Attorney wilfully and wantonly failed to have a hearing prior to termination of Ferguson's probation and failed to advise the court of the necessity for a mental evaluation, ignored medical reports in failing to have a medical examination prior to termination of probation, and failed to take any action whatsoever on the reported threats.

Each of the defendants filed a motion to dismiss the respective counts of the complaint. The circuit court granted the motions on all counts.

With regard to defendant City of Springfield, it is well settled that a municipality is not liable for failing to provide general police protection. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214.) The police have a duty to the general public to preserve the community's well-being by preventing crimes, but the duty is not owed to specific individuals. (*Santy v. Bresee* (1984), 129 Ill. App. 3d 658, 473 N.E.2d 69.) As a matter of public policy, negligence attributed to members of a police department is not considered to be the proximate or legal cause of injuries caused by the acts of others. (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610.) However, there is an exception if the police assume a special relationship to an individual, thereby elevating his or her status above that of members of the general public. (*Huey*, 41 Ill. 2d 361, 243 N.E.2d 214; *Mallder v. Rasmussen* (1986), 145 Ill. App. 3d 809, 495 N.E.2d 1356.) In order to fit within this exception, four elements must be alleged by plaintiff:

"(1) [T]he municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation]; (2) there must be allegations of specific acts or omissions on the part of the municipality [citation]; (3) the specific acts or omissions on the part of the municipal employees must be either affirmative or wilful in nature [citation]; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation]." (*Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106.)

Of course, in this case it would be the deceased who would have had to have been in the direct and immediate control of the municipality.

Recently in *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515, this court reconsidered these rules and refused to abolish the "public duty" doctrine. In *Fessler*, we also stated there must be factual allegations in the complaint giving rise to each of the four elements of the duty, and the question of whether a duty is properly alleged is a matter of law to be determined by the court.

In this case, there is no allegation that the deceased was in the direct and immediate control of the City of Springfield. As a result, the city had no duty to deceased and count I was properly dismissed.

Furthermore, as to the State's Attorney, *Santy* applies the same principles recited in *Fessler* to all law enforcement agencies and officers, including State's Attorneys. In *Santy*, this court pointed out that allegations of requests for protection and knowledge of threats and even failures to provide promised warnings will not give rise to a special relationship.

Lastly, the attention of this court has been drawn to sections 4—102 and 4—107 of the Local Governmental and Governmental Employees Tort Immunity Act, under article IV—Police and Correctional Activities, which provides in relevant part:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, *failure to prevent the commission of crimes*, failure to detect or solve crimes, *and failure to* identify or *apprehend criminals*." (Emphasis added.) Ill. Rev. Stat., 1986 Supp., ch. 85, par. 4—102.

"Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or *by re-*

*leasing a person in custody."* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 85, par. 4—107.)

These provisions unequivocally provide immunity for all the defendants in the case at bar. See *Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 363 N.E.2d 87.

Accordingly, the order of the circuit court of Sangamon County dismissing plaintiffs' complaint is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.